## United States *v.* Hearing.

*(Circuit Court, D. Oregon. March 22, 1886.)*

1. PERJURY—SECTION 2294, REV. ST.

   An applicant for the entry of land, under the homestead act, may make oath to the excusatory facts that authorize him to verify the affidavit accompanying his application, before the clerk of the county, as provided in section 2294, Rev. St., and if such oath is willfully and knowingly false in any material particular, or includes a statement of fact which such applicant did not believe, he is guilty of perjury as defined by section 5392, Rev. St.

2. SAME—INDICTMENT—ALLEGATION THAT OATH IS "CORRUPTLY" FALSE.

   It is not necessary in an indictment under section 5392, Rev. St., to allege that the oath of the defendant was "corruptly" false, but it is sufficient to describe the offense in the language of the statute.

3. SAME—JURAT.

   In an indictment for perjury in swearing to an affidavit, it is not necessary that it should appear that the officer before whom the oath was taken wrote a jurat or memorandum of the transaction on the instrument, but it is sufficient, after setting out the affidavit, to allege that the defendant, being duly sworn, did depose and say that the same was true; and the fact may be proved by parol.

4. SAME—ALLEGATION THAT DEFENDANT WAS SWORN.

   In an indictment for perjury it must distinctly appear that the defendant was duly sworn.

Indictment for Perjury.

*James F. Watson,* for plaintiff.

*W. D. Fenton,* for defendant.

DEADY, J.   The defendant is accused by the grand jury of the crime of perjury, alleged to have been committed as follows:

"On December 8, 1883, the defendant having then and there subscribed the following written declaration and affidavit:

" 'Homestead Affidavit, under Section 2294, Rev. St., for Settlers Who cannot Appear at the District Land-Office.

" 'OFFICE OF THE CLERK OF THE DISTRICT COURT FOR LINN COUNTY,
" 'December 8, 1883.

" 'I, James A. Hearing, of Sweet Home, Linn county, Oregon, having filed my homestead application No. ——, do solemnly swear that I am a native citizen of the United States, over the age of 21 years; that said application No. —— is made for the purpose of actual settlement and cultivation; that said entry is made for my exclusive use and benefit, and not directly or indirectly for the use or benefit of any other person or persons whomsoever; that I am now residing on the land I desire to enter, and that I have made a *bona fide* improvement and settlement thereon; that said settlement was commenced December 5, 1883; that my improvements consist only of some slashing done on the place, and that the value of the same is $5; that owing to the great distance, I am unable to appear at the district land-office to make this affidavit, and that I have never before made a homestead entry except   *   *   *   .'

"James A. Hearing did then and there, before C. H. Stewart, clerk of the court for Linn county, Oregon, then and there having full authority to administer said oath, falsely, knowingly and contrary to his said oath, depose and state that the foregoing and hereinafter set forth affidavit was true. That it was not true that the said defendant was then, or any time before said December 8th, residing on the land he desired to enter, and that it was not true that he had made any settlement or improvement thereon, and that it was not true that his improvements consisted of some slashing done on the place, and that it was not true that the value of the same was $5; that the said defendant, when he took said oath and made said statements, well knew the same to be false, and did not believe the same or any one of them to be true; and that each of said statements was material."

The indictment was found on July 16, 1885, and on November 30th the defendant demurred thereto, for that it did not state facts sufficient to constitute a crime.

On the argument sundry points were made in support of the demurrer which will be noticed hereafter.

The indictment is based on section 5393, Rev. St., which provides: "Every person who, having taken an oath before a competent tribunal, officer, or person, in any case in which *a law of the United States authorizes an oath to be administered,* that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall be punished" as therein stated.   By section 1 of the act of May 20, 1862, (12 St. 392; section 2289, Rev. St.,) the privilege of entering a quarter section or less of the public land subject to pre-emption was given to any person who is the head of a family, or 21 years of age, and a

citizen of the United States, or has declared his intention to become such. By section 2 of the same, (2290, Rev. St.,) the person applying for the benefit of the act is required to make an affidavit before the register or receiver, showing that he is entitled thereto, and also that such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person;" and by section 3 of the act of March 21, 1864, (12 St. 35; section 2294, Rev. St.,) it is provided that "in any case in which the applicant for the benefit of the homestead, and whose family, or some member thereof, is residing on the land which he desires to enter, and upon which a *bona fide* improvement and settlement have been made, is prevented by reason of distance, bodily infirmity, or other good cause from personal attendance at the district land-office, it may be lawful for him to make the affidavit required by law before the clerk of the court for the county in which the applicant is an actual resident."

The affidavit in this case states, not only the qualification of the applicant and his purpose in making the entry, as required by section 2290 of the Revised Statutes, but also the facts and circumstances which authorized it to be made before the clerk, rather than the register or receiver.

The assignments of perjury in the indictment are all made on the defendant's statement in the affidavit concerning these facts and circumstances. Substantially, they are: It is not true that on or before December 8, 1883, the defendant either (1) resided on the land in question; (2) made any improvement or settlement thereon; (3) did any "slashing" on the place; or (4) that said slashing was of the value of $5. There is no express provision in the statute requiring these matters to be shown by the oath of the applicant, or otherwise, before the affidavit showing his right to make the entry can be received at the land-office.

Counsel for the demurrer contends on this state of the statute that there is no law in the United States which authorized the administration of an oath to the defendant concerning these excusatory facts and circumstances, and therefore the case does not fall within the provisions of section 5393 of the Revised Statutes, defining the crime of perjury. It is not directly contended that the existence of these facts was not material to the right of the defendant to make his proof of qualification and purpose, before the clerk, to make an entry under the homestead act, but only that, however material they may have been in that connection, the statute did not require or authorize the defendant to make an oath to them. The oath of the applicant to the affidavit or the excusatory facts is not compulsory. But whoever wishes to have the benefit of the homestead act must show in some way the existence of the facts which entitle him thereto; and these, when not of record, being within the applicant's knowledge, may be

shown by his own oath.   As to the facts showing the qualification of the applicant, and his purpose in making the entry, the statute expressly permits and requires them to be proven by his oath; and if there were no specific direction in the statute on the subject, I think he would be allowed to do so as a matter of course.   And this is the condition of the statute in regard to these excusatory facts.   The mode of their proof is not prescribed, and convenience, usage, and necessity all point to the oath of the party as the proper evidence of their existence.   Certainly it would be within the power of the department to make a regulation on the subject, permitting or prescribing this mode of proof in such a case.

In *U. S.* v. *Bailey*, 9 Pet. 238, it was held that the act of March 1, 1823, (3 St. 771,) declaring "that if any person shall swear or affirm falsely touching the expenditure of public money, or in support of any claim against the United States, he shall be guilty of perjury," included, in the language of the syllabus, " an affidavit taken before a state magistrate, authorized to administer oaths, in pursuance of a regulation or in conformity with a usage of the treasury department, under which the affidavit would be admissible evidence at the department in support of a claim against the United States, and perjury may be assigned thereon."

So here, the statute not having prescribed the mode of proving the excusatory or preliminary facts, a regulation of the department might direct or permit that it be done by some such recognized mode of proceeding as the oath of the applicant, and thereupon such oath when taken is administered, in effect, under or in pursuance of a law of the United States, and therefore perjury may be assigned thereon. Whether such a regulation exists or not is a matter within the judicial knowledge of the court; that is, it is a matter about which the court may inform itself.   My attention has not been called to any specific regulation of the department on the subject, but I am quite certain there is one.   The facts must be shown in some way, before the affidavit can be sworn to before the clerk; and as the statute is silent thereabout, in the nature of things, 20 years would not have elapsed without some department regulation or usage on the subject. The affidavit used in this case is evidently a blank form filled up, and, if so, in all probability a department blank; and the reasonable inference from this fact, if it be one, is that there is a regulation of the general land-office to the effect that the affidavit required of an applicant for a homestead entry, when made before a clerk, may contain a statement of the facts which authorize the affidavit to be verified before such officer.

But I think that even in the absence of any statute or department regulation on the subject, the applicant might prove the existence of the facts which authorized him to swear to his affidavit before the clerk by his own oath.   As I have said, they must be shown or proven in some way before an affidavit taken by a clerk can be used in the

land-office. The usual way of proving facts like these in such a proceeding is the oath of the applicant; and if they are so proved, I think the oath may be made before the clerk authorized to take the affidavit. As the authority of the clerk to swear the applicant to the affidavit depends on the existence of the facts excusing the latter's attendance at the land-office, it is convenient and proper that they should be made to appear to him before administering the oath to the applicant; and this may be conveniently done by incorporating the applicant's statement concerning them in his affidavit. On the other hand, if the proof of these facts must be made before the register or receiver, the applicant is, in effect, deprived of the privilege of making his affidavit at home, before the clerk, and if he attends at the district land-office at all, he has no use for the excusatory facts, and may make his affidavit there without any reference to them.

On the whole, my conclusion is, the act of 1864 permitting an applicant to make his affidavit for a homestead entry in a certain contingency before a clerk, by a necessary implication, requires such applicant, before he can avail himself of such privilege, to show by oath that such contingency exists; and that the clerk may, as incidental to his power to take the affidavit, administer such oath. The matter is also material, for on the existence of the excusatory facts depends the power of the clerk to administer the oath to the affidavit, and the right of the applicant to take the same before him, and use it in the land-office.

Neither is it necessary to allege in the indictment that the false oath was taken "deliberately and corruptly," or otherwise than as indicated by the language of the statute defining the crime, namely, that the defendant, "willfully and contrary" to his oath to testify truly, did state what he did "not believe to be true." If the defendant willfully stated in his affidavit that which he did not believe to be true, he thereby committed the perjury defined in this statute, and nothing further need be alleged to show it. It is admitted that in charging a common-law perjury it is usual, and probably necessary, to allege that the oath is willfully and corruptly false. 2 Whart. Crim. Law, § 1286; 2 Bish. Crim. Law, § 1046.

But this is a statute offense, and it is sufficient to describe it in the words of the statute. In this case the *corruptness* or evil intent is sufficiently manifest from the terms of the statute. No one can willfully testify in a matter material to that which he does not believe, with other than an evil intent, or, in other words, corruptly. Nor is it necessary that it should appear from the indictment that the clerk made a jurat or memorandum on the affidavit, stating when and where the defendant swore to the same. If the oath was in fact administered by the clerk to the defendant, it is not necessary, for the purpose of this proceeding, that he should have made a memorandum of the fact on the affidavit or elsewhere. The guilt or innocence of the defendant depends on the state of his knowledge when

he took the oath, and not on the subsequent conduct of the officer in making, or omitting to make, a memorandum of the transaction.

But I do not think it is sufficiently alleged in the indictment that the defendant was sworn to the affidavit. The affidavit and the subscription thereto are set out in the indictment, and this should have been followed by an allegation to the effect that the defendant, being then and there duly sworn by the clerk of the court for Linn county, did depose and state that said affidavit was true. The allegation in the indictment that the defendant did depose and state contrary to his *said oath* is, if anything, an attempt to assign perjury on a "said" or supposed oath, the administration of which is nowhere alleged. But the fact that the defendant was sworn must be distinctly stated. It is not sufficient even that it appears by implication. 2 Whart. Crim. Law, § 1287.

It is also objected to the indictment that it does not allege that the defendant was a resident of Linn county at the time of taking the oath, and that the affidavit refers to an application not identified by number or description of the land mentioned therein. But as the demurrer to the indictment must be sustained because it does not appear therefrom that the defendant was sworn to the affidavit, it is not necessary to consider these objections.

If the defendant was sworn to the affidavit set out in the complaint, before the clerk, and the same was false to his knowledge in any one of the particulars alleged, an indictment for perjury may be maintained thereon. I will therefore submit the matter to the next grand jury for their consideration, when these objections may be obviated in the preparation of another indictment.

The demurrer is sustained, and the charge is directed to be submitted to the next grand jury.