EDWARD P. ALLIS CO. v. STANDARD NAT. BANK OF CITY OF NEW YORK et al.

(Circuit Court, S. D. New York. June 28, 1901.)

EQUITY—SUIT FOR FRAUD—EVIDENCE CONSIDERED.

> Evidence held insufficient to establish fraud on the part of defendant national bank in the organization or operation of a corporation which was formed by complainant and the bank's co-defendants, who were its stockholders, to take over the property of two insolvent lumber companies, of which both complainant and the bank were creditors, which would afford the basis for any equitable relief against the bank.

In Equity. On final hearing.

William E. Carter, for complainant.

Henry H. Bowman, for defendants Standard Nat. Bank, Burrows, Brown, and New York Lumber Co.

COXE, District Judge. The complainant is a Wisconsin corporation. The defendant the Standard National Bank is a banking corporation, organized under the national bank act, doing business in the city of New York. The New York Lumber Company is a Florida corporation. The defendant Brown is a citizen and resident of New Jersey and the defendant Burrows is a citizen and resident of New York. Both Brown and Burrows are stockholders, directors and officers of the Standard National Bank, the former being vice president and the latter cashier. In the early part of 1896 the complainant was the owner and in possession of a sawmill plant

at Chatterton, Fla. This plant had formerly been occupied by the C. T. Snowden Cypress Mill Company, a corporation, which had abandoned it and conveyed it to the complainant. The Snowden Company had theretofore entered into a contract with a New Jersey corporation, known as the Withlacoochee Lumber Company, by the terms of which the Snowden Company had agreed to remove to its mill and convert the same into marketable lumber the standing trees which the lumber company owned or represented that it owned for an agreed price per thousand feet. Both companies became financially embarrassed and the Snowden Company transferred its property to the complainant as above stated in payment for the mill plant and machinery which had been furnished by the complainant. The defendant the Standard National Bank had, prior to this time, become a creditor in the sum of about $15,000 of the lumber company for which debt it held no available security. Upon investigation it was discovered that the lumber company was without assets, the title to the lands which it was supposed to own being in one Paul of Philadelphia. The bank was also a creditor of the Snowden Company. In these circumstances the defendant the New York Lumber Company was organized with the expectation and hope that by a reorganization of the business with additional capital it might prove successful and thus enable all the creditors, the complainant included, to make themselves whole in the future. The stock of the new company was to be apportioned among the creditors, and it was a part of the plan, assented to by the complainant, that its sawmill and plant was to be leased and used by the new company in carrying on its business by converting into marketable lumber the cypress timber obtained from the said Paul. To attempt a statement of the various transactions in detail would subserve no useful purpose. Generally speaking it may be said that when the agreements between the parties were made the situation in Florida was desperate. Both the complainant and the defendants had invested large sums of money there. Their debtors had failed, the title to the timber was in dispute, the sawmill had been shut down, there was no money to work the plant, and unless some effort was made to put new life into the situation nothing but total loss confronted the creditors. The complainant was the largest creditor of the Snowden Company and it held a judgment of $10,000 against the Withlacoochee Company. It, therefore, had at least as much interest in the plan and its success as did the defendants. The complainant's mill was of little value unless it could obtain timber to saw. The court has searched the testimony in vain for any evidence of fraud or conspiracy. The complainant, through its agent, was consulted as to each step in the proceedings. Nothing was done in the dark; there were no false representations. All of the principal agreements were reduced to writing after full discussion and although the plan was unsuccessful the complainant fared far better than the other creditors. It received $7,000 from the New York Lumber Company and subsequently sold its plant for nearly $20,000. The Standard National Bank, on the contrary, in attempting to finance the new company advanced $36,601, which has not been paid, which sum,

in addition to its original claim, makes its total loss in the transaction $51,501. The theory of the bill seems to be that the Standard National Bank conceived a scheme to defraud the complainant; that the New York Lumber Company was only "an assumed name" for the bank and that the bank manipulated its puppet in its own interest and against the interest of the complainant. There is no agreement, oral or written, in the name of the bank, and the proof, as before stated, utterly fails to substantiate any of the charges of fraud or conspiracy.

The relief demanded in the bill of complaint is as follows: First. That the defendants be adjudged and decreed to reassign to the complainant a judgment obtained by it against the Withlacoochee Lumber Company and transferred to the defendants Brown, Mayer and Lynch September 29, 1896. Second. That an accounting be had between the complainant and defendants for rentals, taxes and insurance due under the lease of the sawmill plant to the New York Lumber Company and for damages occasioned by the improper care of the said plant. Third. That the defendant Brown, who, in consideration of an extension by the complainant of the time of payment of the rent due August 1st and the months following, agreed to pay $5,000 of the amount so extended on or before January 1, 1898, be adjudged and decreed to pay said amount and interest thereon. Fourth. That the defendant the Standard National Bank "by and through its said creature said New York Lumber Company" may be adjudged and decreed to convey to the complainant all interest which the said bank or lumber company have obtained or will obtain in the 15,000,000 feet of cypress timber agreed to be conveyed by said Paul. Fifth. That the defendants Brown, Mayer and Lynch be "decreed and directed to cause the said defendant Burrows to forthwith turn over to your orator the said $60,000 in stock so placed in his hands as above stated."

The demand for relief as stated in the complainant's brief differs somewhat from the statement in the bill. In the brief it resolves itself into a money demand for the balance of unpaid rent due the complainant upon the lease of its property to the New York Lumber Company, dated November 9, 1896, for $10,020, the value of three pull boats destroyed or lost by the lessee and some other small items of damage. The inconsistency between the two may perhaps find its origin in the impossibility of discovering a plausible theory upon which to base an equity action. As the evidence fails to establish any agreement or obligation on the part of the bank which renders it liable to the complainant it is unnecessary to consider what would be the situation if the bank had done or attempted to do the acts alleged in the bill. The court is unable to discover any property of the complainant in the possession of the bank for which it should account. It is very clear that a national bank cannot operate a sawmill in Florida or conceive and carry out a scheme for carrying on such business through a dummy corporation which is the bank under another name. Such acts are ultra vires, unauthorized by the United States statutes and forbidden by law. Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed.

110 F.—4

198; McCormick v. Bank, 165 U. S. 538, 549–551, 17 Sup. Ct. 433, 41 L. Ed. 817. The obligation of the defendant Brown to pay $5,000 under his agreement with the complainant of August 3, 1897, would seem to be valid and enforceable, but it is difficult to perceive what jurisdiction a court of equity has in the matter. It is a simple-contract debt for which an action at law will lie. If the complainant held the overdue promissory note of Brown for $5,000 it will hardly be pretended that an action in equity could be maintained on the note, but in legal effect the situations are the same. If the complainant brings an action at law upon the agreement of August 3, 1897, the court feels reasonably confident that Brown will not be able to escape liability upon the plea that equity alone has jurisdiction. The demand that the defendants "or whichever of them now has or claims to have nominal title thereto" may be decreed to reassign the judgment obtained by the complainant against the Withlacoochee Lumber Company is not discussed in the defendants' brief, but as the court recalls the oral argument no serious objection to this being done was advanced and the court is unable to see how the rights of the defendants can be jeoparded by the transfer. Unless some reason is advanced which has not already been brought to the attention of the court the decree may provide for the assignment to the complainant by the present owner of the judgment. The title appears to be in the New York Lumber Company, but as this is not entirely clear from the record the matter may be continued until the settlement of the decree. In all other particulars the bill is dismissed.