UNITED STATES v. MAID.

(District Court, S. D. California, N. D. April 28, 1902.)

No. 35.

1. CRIMINAL LAW—OFFENSE AGAINST UNITED STATES.
   A criminal offense against the United States cannot be predicated of the violation of a requirement imposed only by a rule or regulation of one of the executive departments of the government.

2. PERJURY—AFFIDAVIT FOR HOMESTEAD ENTRY—MATERIALITY.
   To constitute the crime of perjury under Rev. St. § 5392, by the making of a false affidavit in relation to an entry of public lands, it is essential that such affidavit should be material, and that it should be authorized by a law of the United States. Such a charge cannot be based upon an affidavit of the nonmineral character of the land made in support of a homestead entry, although a regulation of the land office requires such an affidavit to be made in certain states, since it is not required by Rev. St. § 2290, which prescribes the contents of a homestead affidavit, and the statute cannot be added to for criminal purposes by a departmental regulation.

Criminal Prosecution. On demurrer to indictment.

L. H. Valentine, U. S. Atty.
Hannah & Miller and W. D. Crichton, for defendants.

WELLBORN, District Judge. Indictment for perjury, under section 5392, Rev. St. U. S., which provides that "every person, who, having taken an oath, before a competent * * * officer, * * * in any case in which a law of the United States authorizes an oath to be administered, that * * * any material * * * declaration * * * by him subscribed is true, wilfully, and contrary to such oath * * * subscribes any material matter, which he does not believe to be true, is guilty of perjury," etc. The alleged crime is predicated of a nonmineral affidavit accompanying a homestead application. Among other objections to the indictment, the defendant urges that said affidavit was unauthorized by any law of the

United States, and immaterial; citing U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 594; U. S. v. Manion (D. C.) 44 Fed. 800; U. S. v. Bedgood (D. C.) 49 Fed. 54; and U. S. v. Howard (D. C.) 37 Fed. 666. Plaintiff concedes that there is no act of congress expressly requiring homestead applications to be accompanied by nonmineral affidavits, but quotes from circular of the general land office issued October 30, 1895, page 80, rule 24, as follows: "In all entries of non-mineral lands in the states of * * * California, * * * a non-mineral affidavit is required," and claims that said rule, promulgated by the land office, has the force of law; citing sections 441, subd. 2, 453, and 2478, Rev. St. U. S.; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; U. S. v. Hearing (C. C.) 26 Fed. 747; Cosmos Exploration Co. v. Gray Eagle Oil Co. (C. C.) 104 Fed. 45; Id., 50 C. C. A. 79, 112 Fed. 4. A rule of a department, to be valid, must be consistent with the legislation of congress.

In Cosmos Exploration Co. v. Gray Eagle Oil Co., supra, on appeal, 50 C. C. A. 87, 112 Fed. 11, the court says:

"The commissioner of the general land office has authority to make regulations respecting the disposal of the public lands, and such regulations, when not repugnant to the acts of congress, have the same force and effect of laws."

The circuit court of appeals for the Seventh circuit has said:

"We hesitate, of course, to interpret a statute contrary to the construction put upon it by the interior department, and to the rules and regulations adopted by the department to carry out its provisions; but when the construction of the department is clearly wrong, and its rules and regulations have the effect of distinctly changing rights created under the statute, amounting to a denial to the appellant of one of her rights, the occasion for hesitation ceases. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267." Hoover v. Salling, 49 C. C. A. 30, 110 Fed. 47.

The supreme court has definitely settled the question as follows:

"The secretary of the treasury cannot, by his regulations, alter or amend a revenue law. All he can do is to regulate the mode of proceeding to carry into effect what congress has enacted. In the present case we are entirely satisfied the regulation acted upon by the collector was in excess of the power of the secretary. The statute clearly includes animals of all classes. The regulation seeks to confine its operation to animals of 'superior stock.' This is manifestly an attempt to put into the body of the statute a limitation which congress did not think it necessary to prescribe. Congress was willing to admit, duty free, all animals specially imported for breeding purposes. The secretary thought this privilege should be confined to such animals as were adapted to the improvement of breeds already in the United States. In our opinion, the object of the secretary could only be accomplished by an amendment of the law. That is not the office of a treasury regulation." Morrill v. Jones, 106 U. S. 467, 1 Sup. Ct. 424, 27 L. Ed. 268.

In a later case occurs the following reference to the one last cited:

"It was said by this court in Morrill v. Jones, 106 U. S. 466, 467, 1 Sup. Ct. 423, 27 L. Ed. 267, 268, that the secretary of the treasury cannot, by his regulation, alter or amend a revenue law, and that all he can do is to regulate the mode of proceeding to carry into effect what congress has enacted. Accordingly, it was held in that case, under section 2505 of the Revised Statutes, which provided that live animals specially imported for breeding purposes from beyond the seas should be admitted free of duty

upon proof thereof satisfactory to the secretary of the treasury, and under such regulations as he might prescribe, that he had no authority to prescribe a regulation requiring that, before admitting the animals free, the collector should be satisfied that they were of superior stock, adapted to improving the breed in the United States. Much more does this principle apply to a case where it is sought substantially to prescribe a criminal offense by the regulation of a department. It is a principle of criminal law that an offense which may be the subject of criminal procedure is an act committed or omitted 'in violation of a public law either forbidding or commanding it.' 4 Am. & Eng. Enc. Law, 642; 4 Bl. Comm. 5." U. S. v. Eaton, supra.

Section 2290 of the Revised Statutes of the United States prescribes in clear and precise terms the requisites to a homestead entry, and is as follows:

"Sec. 2290. The person applying for the benefit of the preceding section shall, upon application to the register of the land-office in which he is about to make such entry, make affidavit before the register or receiver that he is the head of a family, or is twenty-one years or more of age, or has performed service in the army or navy of the United States, and that such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person; and upon filing such affidavit with the register or receiver, on payment of five dollars when the entry is of not more than eighty acres, and on payment of ten dollars when the entry is for more than eighty acres, he shall thereupon be permitted to enter the amount of land specified."

Rule 24 of the general land office, above quoted, although a valid regulation of selections in lieu of relinquished lands in forest reservations (Cosmos Exploration Co. v. Gray Eagle Oil Co., supra), in so far as it requires nonmineral affidavits in homestead entries, conflicts with the last clause of said section 2290, which declares that, upon filing the affidavit therein prescribed, which is wholly different from a nonmineral affidavit, and making the payments required by said section, the applicant "shall thereupon be permitted to enter the amount of land specified"; and, upon all the authorities, must, to that extent, be held inoperative.

There is another aspect of the case, however, which furnishes as strong an argument against plaintiff's contention as the one just considered, and it is this: A department regulation may have the force of law in a civil suit to determine property rights, as in Cosmos Exploration Co. v. Gray Eagle Oil Co., supra, and yet be ineffectual as the basis of a criminal prosecution. U. S. v. Eaton, supra. The supreme court of the United States, in the case last cited, marks the distinction thus:

"Regulations prescribed by the president and by the heads of departments, under authority granted by congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them; and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense."

The obvious ground of said distinction is that to make an act a criminal offense is essentially an exercise of legislative power, which cannot be delegated, while the prescribing by the president or head

of a department, thereunto duly authorized, of a rule, without penal sanctions, to carry into effect what congress has enacted, although such rule may be as efficacious and binding as though it were a public law, is not a legislative, but ministerial, function.

In U. S. v. Blasingame, 116 Fed. 654, decided at the November term, 1900, of this court, held in Fresno, the following brief opinion, unreported, was filed by me:

"I am of opinion that the act [Act June 4, 1897 (30 Stat. 11)] entitled 'An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirtieth, eighteen hundred and ninety-eight, and for other purposes,' in so far as it declares to be a crime any violation of the rules and regulations thereafter to be made by the secretary of the interior for the protection of forest reservations, is in substance and effect a delegation of legislative power to an administrative officer. While the supreme court of the United States, in Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294, and also in Re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813, held that there was no unconstitutional delegation of power in either case, yet, applying and observing here the principles and distinctions there enunciated and recognized, it is impossible to escape the conclusion which I have announced. U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, although not precisely like the case at bar, may also be aptly cited in support of said conclusion. Clear statements and pertinent applications of the doctrine announced by the supreme court of the United States in the two cases first above cited that legislative power can be exercised only by that branch of the government to which the constitution commits it, will be found in People v. Parks, 58 Cal. 624; Ex parte Cox, 63 Cal. 21; and Board of Harbor Com'rs v. Excelsior Redwood Co., 88 Cal. 491, 26 Pac. 375, 22 Am. St. Rep. 321."

These cases do not conflict, but are in line with Caha v. U. S., supra, as appears by the following excerpts therefrom (italics mine):

"We have, therefore, a general grant of authority to the land department to prescribe appropriate regulations for the disposition of the public land; *a specific act of congress authorizing contests before the local land offices in cases of pre-emption;* rules and regulations prescribed by the land department for contests in all cases of the disposition of public lands, including both pre-emption and homestead entries; *and the frequent recognition by acts of congress of such contests in respect to homestead entries.* Clearly, then, within the scope of section 5392, the local land officers in hearing and deciding upon a contest with respect to a homestead entry constituted a competent tribunal, and the contest so pending before them was a case in which the laws of the United States authorized an oath to be administered. This is not a case in which the violation of a mere regulation of a department is adjudged a crime. * * * Nor is there anything in the case of U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, conflicting with the views herein expressed. In that case the wrong was in the violation of a duty imposed only by a regulation of the treasury department."

Then follows a statement of the facts in U. S. v. Eaton, and the quotation therefrom which I have given above.

Thus it will be seen that the contests before local land officers by reason of which the supreme court of the United States in Caha v. U. S., supra, held such officers to be a competent tribunal, within the scope of section 5392, although originally provided for in department regulations, had frequent recognition by acts of congress. In the case at bar materiality of the affidavit set out in the indictment and its authorization by a law of the United States are essential elements of the crime sought to be charged. To hold that said ele-

ments exist when there is no statutory requirement or authority for the affidavit, and solely because of rule 24, above mentioned, assuming now that said rule is not repugnant to any act of congress, would make the rule a part of the law defining perjury, and thus admit what all the authorities deny,—legislative power in the executive branch of the government. Whether or not the indictment is insufficient in failing to allege that the lands in question contain valuable mineral deposits it is unnecessary to determine in view of the conclusion above announced. The jurisdictional objections to the indictment are not well taken. See opinion filed this day in U. S. v. Peuschel (D. C.) 116 Fed. 642.

On the ground indicated, namely, immateriality of the affidavit set out in the indictment, the demurrer will be sustained.