ISIDORO RIVERA GONZÁLEZ, Petitioner and Appellant, *v.* ANDRÉS A. LUGO, WARDEN, ETC., Respondent and Appellee.

No. 7582. Argued February 21, 1938.—Decided July 28, 1938.

654

*Arturo O'Neill* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Petitioner for a writ of *habeas corpus* had been convicted by a municipal court for the violation of an order of the Public Service Commission, the dispositive portion of which, as amended March 16, 1935, reads in part as follows:

"Motor vehicles not previously authorized by this Commission are further enjoined hereby from working or operating as public carriers in the transportation of passengers per seat, by offering or rendering their services to the public in general for gain and per seat between points covered by the routes served by the White Star Bus Line, Inc."

The district court after a writ and a hearing dismissed the petition. Petitioner appeals and submits that the district court erred in sustaining the validity of the order and in sustaining the validity of section 95 of the Public Service Act, amended in 1927 (Second Special Session, 398, 406).

The White Star Bus Line, Inc., is the owner of a franchise with exclusive authority to establish, maintain, and operate a motor vehicle bus service for hire, for the transfer and transportation of passengers between and within the Municipalities of San Juan and Río Piedras and intermediate points. The franchise provides that all routes for the service authorized shall be fixed by the Public Service Commission after a hearing, according to the grantee. It further provides that the exclusive authority granted shall apply to local transportation wholly within and between the Munic-

ipalities of San Juan and Río Piedras, passing through, into, or out of said Municipalities of San Juan and Río Piedras.

 The first contention of appellant under the first assignment seems to be that the order of the commission is invalid because the prohibition is not confined to "omnibuses." The monopoly of the transportation of passengers by omnibus was, appellant insists, what the commission had in mind in granting the franchise. In support of this theory appellant refers us to *Santiago* v. *Public Service Commission et al.*, 37 P.R.R. 467, 482, where this court said:

"The franchise under consideration grants to the White Star Line the exclusive right to carry passengers in omnibuses between San Juan and Río Piedras over the streets and public roads under certain conditions and subject to the control of the Commission."

In that case, however, the competitor of the White Star Line was the owner of a twenty-two-passenger omnibus. The question as to whether the exclusive feature of the franchise was limited to transportation by "omnibus," was not involved and was not in the mind of the court. We did not mean to say and did not say that the transportation authorized by the franchise was so limited. The franchise does not use the word "omnibus," but as we have shown grants exclusive authority "to establish, maintain, and operate a motor bus service for hire for the transfer and transportation of passengers between and within the Municipalities of San Juan and Río Piedras and intermediate points."

In 42 Corpus Juris, 611, sec. 7, it is said that—

"A motor bus or autobus may be defined as any automobile or trackless motor vehicle engaged in the business of carrying passengers for hire and held out or announced to operate or run over a particular route to a particular point or within designated territory."

The order of the commission might have been couched in different language. Perhaps it might have been more happily worded. Fairly construed, it does not forbid the use of any motor vehicle when not used as a motor bus along

the fixed routes of the White Star Bus Line. A taxicab or a touring car—as long as it is used as a taxicab or as a touring car—is not a motor bus. When a taxicab or a touring car is used or held out to run over a particular route for which service the owner or driver collects from each passenger a fare as the price of a seat in the vehicle, then the vehicle ceases to be a taxicab or a touring car and becomes a motor bus. We are not prepared to say that the order of the commission was *ultra vires* and void merely because it prohibited the unauthorized use of a touring car or a taxicab or other motor vehicle, as a public carrier, over the routes of the White Star Bus Line, at a price per seat to be paid by each passenger, picked up along such routes.

 Another contention under the first assignment is that the Public Service Commission can not create or define a criminal offense. In support of this contention appellant cites:

Section 2 of the Organic Act; section 5 of the Penal Code; 16 Corpus Juris 64, sec. 22; *Ex parte Rivera,* 34 P.R.R. 741; *People* v. *Paratze,* 22 P.R.R. 35; *People* v. *Terrasa,* 28 P.R.R. 10; *Ex parte Rivera,* 35 P.R.R. 261; Note 58(*a*) and cases cited in 16 C. J. supra; 6 R.C.L. 435–437; 16 C. J. 62, sec. 10; 6 R.C.L. 164, 165, sec. 165–166; Id. 177, 178, sec. 178; *Morril* v. *Jones,* 106 U. S. 466; *U. S.* v. *Eaton,* 144 U. S. 677; *U. S.* v. *Symonds,* 120 U. S. 46; *U. S.* v. *Todd,* 158 U. S. 278; *U. S.* v. *Grimond,* 220 U. S. 506; *U. S.* v. *Keitel,* 157 Fed. 396; *U. S.* v. *Sandefuhr,* 145 Fed. 49; *U. S.* v. *Maid,* 116 Fed. 650; *Hampton & Co.* v. *U. S.,* 276 U. S. 408.

The gist of the argument is this:

Petitioner was not charged with the violation of any law enacted by the Legislative Assembly of Puerto Rico; his arrest and conviction was based on an order of the Public Service Commission of Puerto Rico; the commission has no power to create or define a crime in Puerto Rico; if the act in question was not prohibited by law, petitioner had not committed any offense; his arrest, prosecution and conviction was contrary to the provisions of the Penal Code and contrary to the fundamental principle which protects a citizen

from prosecution and punishment for the commission of an act not expressly prohibited by law; due process of law presupposes the existence of a law which has been violated; the commission has created a new offense; to make an act a criminal offense it is essential an exercise of legislative power which can not be delegated; the commission can not amend any law either by adding to the provisions thereof or by suppressing any of its terms; a law must be so complete in all its terms and provisions when it leaves the legislative branch of the government, that nothing is left to the judgment of the electors, or other appointee or delegate of the Legislature; where a statute is incomplete as legislation and authorizes an executive board to decide what shall and what shall not be deemed an infringement of the law, it will be held unconstitutional as purporting to make an improper delegation of legislative power. . . ; what the executive branches of the Government or its different departments can do is to promulgate rules or regulations within the provisions of the law; they can not do anything that is not included in the objectives contemplated by the statute; the Public Service Act does not forbid competition and the commission in prohibiting competition with the White Star Line went beyond the purposes of the law; it was legislating and in applying as the penalty for the violation of the order the penalty provided for another purposes by section 95 of the law, it erred from the standpoint of constitutional law as well as in construing the law.

An adequate discussion of all these questions and of all the authorities cited by appellant would extend this opinion to inordinate length.

*Panama Refining Co.* v. *Ryan,* 293 U. S. 388, is perhaps a stronger case for appellant than any of the authorities cited by him. See also *Schechter Corp.* v. *U. S.,* 295 U. S. 495.

In the course of the opinion in the *Panama Refining Co.* case, however, the Court said at page 421:

". . . Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national legislature cannot deal directly. The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected

instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. Without capacity to give authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility. But the constant recognition of the necessity and validity of such provisions, and the wide range of administrative authority which has been developed by means of them, cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained.''

As pointed out by Mr. Justice Cardozo, in his dissenting opinion, ''the prevailing opinion'' conceded that a standard would have been ''as effective if imported into section 9 (c)'', of the National Industrial Recovery Act, ''by reasonable implication as if put there in so many words.'' In the majority opinion, at page 416, the Court, after a scrutiny of section 9(a), said:

''We examine the context to ascertain if it furnishes a declaration of policy or a standard of action, which can be deemed to relate to the subject of sec. 9(c) and thus to imply what is not there expressed.''

The general grant of the legislative authority contained in section 32 of the first Organic Act was limited by the following proviso:

''. . . Provided, however, That all grants of franchises, rights, and privileges or concessions of a public or quasi-public nature shall be made by the Executive Council, with the approval of the Governor, and all franchises granted in Puerto Rico shall be reported to Congress, which hereby reserves the power to annul or modify the same.''

Section 38 of the second Organic Act provides:

''That all grants of franchises, rights, privileges, and concessions of a public or quasi public nature shall be made by a public service commisison. . . The said commission is empowered and directed to discharge all the executive functions relating to public service corporations heretofore conferred by law upon the executive council and such additional duties and functions as may be conferred upon said commission by the legislature.''

The members of this commission are to be appointed by the Governor with the advice and consent of the Senate. By the terms of that section "the said commission is empowered and directed to discharge all the executive functions relating to public service corporations heretofore conferred by law upon the executive council and such additional duties and functions as may be conferred upon said commission by the legislature." The final paragraph reads as follows:

"The legislative assembly of Puerto Rico is hereby authorized to enact laws relating to the regulation of the rates, tariffs, and service of all public carriers in Puerto Rico, and the public service commission hereby created shall have power to enforce such laws under appropriate regulation."

In 1917 the Insular Legislature passed a law known as "The Public Service Act of Puerto Rico" entitled "An Act defining public service companies; and providing for their regulation; prescribing, defining, regulating, and limiting their rights, powers and duties; prescribing and defining the powers and duties of the public service commission and its officers, prescribing and regulating the practice and procedure before such commission and upon appeal and for other purposes."

Section 2 reads, in part, as follows:

"For the purposes of this Act public-service companies shall be such natural persons or bodies corporate as may engage in Puerto Rico in any of the following pursuits or businesses:

" (a) Transportation of persons or freight using in whole or in part marine, fluvial or land routes.

" * * * * * * *

"The term 'common carrier', as used in this Act, includes any natural person or body corporate engaged for profit in the conveyance of passengers or property, or both, in Puerto Rico, by any means of locomotion."

Section 3 makes it the duty of every public service company—

"To furnish and maintain such service, including facilities, as shall in all respects be just, safe, reasonable, adequate, and practically

sufficient for the accommodation and safety of its patrons, employees, and the public, *and in conformity with such reasonable regulations or orders as may be made by the commission.*

"\* \* \* \* \* \* \*

"(*l*) . . . If a railroad company or street-railway company, or other common carrier, to furnish a sufficient number of trains, cars, vehicles, vessels, or other facilities; and to run and operate the same with such motive power as may reasonably be required, in the conveyance of all such passengers or property as may seek, or be offered to it, for such conveyance; and to run and operate its said trains, cars, vehicles, vessels, or other facilities with sufficient frequency at such reasonable and proper times, and to and from such stations or points, *as the commission, having regard to the general convenience and safety of the public, may require; and, when required by the commission,* to change the time schedule for the running and operation of its trains, cars, vehicles, vessels, and other facilities; and generally, make any other arrangements and improvements in its service *which the commission may determine and require; Provided,* That when any train, car, vehicle or vessel suffers any damages it shall be immediately withdrawn from the service and substituted by another in good condition.

"\* \* \* \* \* \* \*

"(*y*) . . . To observe and obey all and singular the lawful orders and regulations which may be issued or made by the commission in the exercise of the powers conferred upon it by this Act." (Italics ours.)

## Section 9 makes it unlawful for any common carrier:

"(*a*) . . . To charge or receive any greater compensation, in the aggregate, for the conveyance of passengers or property of the same class for a shorter than for a longer distance over the same line in the same direction, the shorter being included within the longer distances; or, *unless specially authorized by the commission,* to charge any greater compensation as a through rate than the aggregate of the intermediate rates, but this shall not be construed as authorizing any common carrier to charge and receive as great a compensation for a shorter as for a longer distance; *Provided, however,* That nothing in this section contained shall prohibit common carriers from establishing reasonable zone systems of charges." (Italics ours.)

Sections 14, 24 (both in part), 25, 48, as amended in 1927 (in part), 49, 50, 52 (in part), 53, 67 (in part), 92 (in part), and 95, as amended in 1927 (in part) read as follows:

"Section 14.—*Functions, Name, Actions by and Seal of Commission.*—The Public Service Commission created by the Organic Act shall discharge all of the executive functions relating to public-service companies heretofore discharged by the Executive Council and shall grant all franchises, rights, powers and privileges of a public or quasi-public nature, as therein and herein provided. *It shall also have power to regulate all public-service companies as therein and herein specified and to carry out the provisions of this Act,* and it shall be known as 'The Public Service Commission of Puerto Rico.'

"Section 24.—*General Powers.*—The Commission shall have general administrative power and authority, as provided in the Organic Act, and in this Act, to discharge all of the executive functions relating to public-service companies heretofore conferred by law upon the Executive Council, to make all grants of franchises, rights and privileges of a public or a quasi-public nature, to supervise and regulate all public service companies doing business in Puerto Rico, and to carry out the provisions of this Act.

"Said power and authority shall include the power to inquire into, hear, determine and regulate the service, rates, fares, tolls or charges of any and all public-service companies, including individual and joint rates; . . . the making of repairs, alterations, and improvements in and to such service, as shall be reasonably necessary for the accommodation or safety of its patrons, employees, and the public; the granting of transfers to or from one part of the system of the same common carrier to another part; the just and equitable distribution of trains, cars, vehicles and motive power, or other facilities, of all common carriers; . . . *the safety, adequacy, and sufficiency of the facilities, plant and equipment for the carrying on of their business* by said public-service companies; . . ."

"Section 25.—*Regulation of Services, Facilities, Rules, Regulations and Practices.*—Whenever the Commissions shall determine, after hearing had upon its own motion, or upon complaint, as hereinafter provided, that the service, facilities, rules and regulations, practices, or classifications of any public-service company, in respect to its public duties are unsafe, inadequate, insufficient, unjust, or unreasonable, the commission shall determine and specify by an order in writing to be made and filed as hereinafter provided the just,

reasonable, safe, adequate, and sufficient service, facilities, rules, regulations, or practices thereafter to be put in force, observed, rendered, used, or furnished in the performance of its public duties by said public-service company; and thereupon it shall be the duty of every public-service company affected by said order to observe and obey said order."

"Section 48.—*Rules and Regulations—Penalties for Violations Thereof—Withholding Information.*—The Commission may make such rules and regulations not inconsistent with law as may be necessary and proper in the exercise of its powers or for the performance of its duties. Said rules and regulations shall be submitted to the Governor of Puerto Rico whose duty it shall be to be approve or disapprove the same. When approved by the Governor, the aforesaid rules and regulations shall have the force and effect of law and any person who knowingly violates them, or who knowingly procures, aids or induces such violation shall be guilty of misdemeanor and upon conviction by a competent court shall be punished by a fine of not more than one hundred (100) dollars; *Provided,* That the municipal courts of the Island shall have jurisdiction in these cases.

"Section 49.—*Power to Enforce Act.*—In addition to the foregoing expressly enumerated powers, the commission shall have authority and it shall be its duty, to enforce, execute and carry out, by its orders, rulings, regulations or otherwise, all and singular, the provisions of articles two and three of this Act, relating, respectively, to the duties and limitations, and to the creation and powers and limitation of powers of public-service companies; and, all and singular, the other provisions of this Act, and the full intent thereof; and shall have the power to rescind or modify any such orders, rulings or regulations.

"Section 50.—*Enumeration of Powers not to Exclude.*—The enumeration of the powers of the commission, as herein set forth, shall not exclude any power which the commission would otherwise have under any of the provisions of this act.

"Section 52.—*Grants to be made.*—The commission shall have power to grant franchises, rights, privileges or concessions for public or quasi-public purposes, *including the right to use,* or cross *roads, highways and public streams;* . . .

"Section 53.—*Conditions and Classes of Concession.*—The commission shall have full power to determine all of the terms and conditions under which such franchises, rights, privileges or concessions

shall be granted, and to determine in what classes of cases such grants shall be made, and shall have the power to exact royalties for the exercise thereof.

"Section 67.—*Complaints to Commission.*—Any natural person or body corporate, complaining of anything done or about to be done, omitted or about to be omitted, by any public-service company in violation of any of the requirements or provisions of this Act, or of *any lawful determination, ruling or order of the commission,* may apply to the commission by petition. . . whereupon a copy of the petition thus presented and filed shall forthwith be forwarded by registered mail, by the commission, to any officer or agent of the public-service company complained against, accompanied by a notice from the commission calling upon the public-service company complained against to satisfy the complaint, or to answer the same in writing, within such reasonable time as may be specified by the commission in said notice.

"Section 92.—*Compliance with Orders.*—Every public-service company, its officers, agents and employees, affected by any final order of the commission. . . shall obey, observe and comply with such order, and with the terms and conditions thereof, so long as the same shall be and remain in force.

"Section 95.—*Penalty for Violating Act.*—If any public-service person or company. . . shall fail, omit, neglect or refuse to obey, observe and comply with any final direction, requirement, determination or order made by the commission. . . such public-service company shall, upon conviction by a court of competent jurisdiction be fined not less than fifty (50) dollars nor more than one thousand (1,000) dollars for such violation, omission, failure, neglect or refusal."

We are not unmindful of the fact that there is no statutory prohibition of unauthorized competition with the grantee of an exclusive franchise. The Legislature has not in so many words conferred upon the Public Service Commission the power to forbid such competition. There is no specific statement of a legislative policy concerning such competition. If there be any established statutory standard, any primary rule or criteria for the guidance of the commission, they must be found in provisions which do not deal directly with the

question of such competition. If other considerations could be put entirely out of view it would be easy enough to say that the Legislature has not laid down any policy in this regard; that it has not established any standard or promulgated any primary rules for the guidance of the commission; that there is no question of unconstitutional delegation or transfer of essential legislative functions because there has been no delegation of authority in the matter of unauthorized competition. If there be any escape from this conclusion, it would and should be reached with great reluctance.

The grantee of an exclusive franchise usually accepts certain onerous conditions specified in the franchise itself. It assumes the obligations imposed upon it by the Public Service Act and those which may be imposed by the Public Service Commission under that act. It carries a heavy burden of responsibility. It cannot evade this responsibility. It has some rights which cannot be ignored.

In 12 C. J. 839, 841, section 323, we find the following:

". . . The difficulty lies, not in determining the governing principle, but in its application to concrete cases. With the growing complexity of modern life, the multiplication of the subjects of governmental regulation, and the increased difficulty of administering the laws, there is a constantly growing tendency toward the delegation of greater powers by the legislature, and toward the approval of the practice by the courts. . ."

Whatever the general trend of judicial opinion may be, the modern public service commission is a typical example of the selected instrumentalities to which may be left "the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply." The efficiency of such a commission largely depends upon the attitude of the courts. That efficiency should not be impaired or destroyed if such a result can be avoided. This is a matter which affects the public interest, convenience and safety in a manner that should not be overlooked nor underestimated.

The Public Service Commission discharges "all the executive functions relating to public service corporations" previously conferred by law upon the executive council. It exercises such other powers and functions as have been conferred upon it by the Insular Legislature. Its power to grant franchises is unfettered. The power to grant an exclusive franchise which subjects the grantee to the obligation of operating over fixed routes to be determined by the Public Service Commission and to all the obligations and duties imposed upon a public-service company by the Public Service Act and to all the powers conferred upon the commission by that act, carries with it, we think, the incidental power of protecting the grantee and the general public, from unauthorized and disastrous competition over the routes which the grantee's vehicles are required to travel and from which they are not permitted to deviate.

The Public Service Act as a whole discloses a definite legislative policy of supervision, regulation and control over public-service companies and public carriers. It regulates these companies and carriers to some extent, establishes certain standards, criteria and rules for the guidance of the Public Service Commission and confers upon the commission the power by and through its own orders, rules and regulations further to regulate, supervise and control such companies and carriers.

Section 52, as we have seen, expressly provides that "the commission shall have power to grant franchises, rights, privileges or concessions for public or quasi-public purposes, including the right to use," roads and highways. It places no limitation or restriction upon this power. The power to confer upon a public-service company the right to use a public thoroughfare as the only route over which it is permitted to carry on its business, includes the power to forbid the unauthorized use of the same thoroughfare by other public service companies engaged in the same business for the purposes of carrying on that business. To hold other-

wise would render nugatory the provisions of section 38 of the Organic Act and of sections 52 and 53 of the Public Service Act to the extent that those provisions confer upon the Public Service Commission the authority to grant an exclusive franchise, would reduce the earning capacity of the grantee under such a franchise, would impair the efficiency of its service, endanger the safety of the public, increase the cost of transportation at the expense of the public and at the expense of that portion of the public which may have invested in the stocks and bonds issued by the grantee in order to carry on its business, would tend to destroy the ability of the grantee to meet the obligations imposed upon it by its franchise and by the terms and provisions of the Public Service Act, would render practically worthless the monopolistic feature of the franchise and would work an unnecessary hardship and injustice, not to say a fraud, upon those who may have invested their money in a public-service enterprise, in good faith and in the reasonable expectation that they and the grantee would be protected in the exercise and enjoyment of an exclusive privilege.

Section 53, confers upon the commission "full power to determine all of the terms and conditions under which such franchise, rights, privileges or concessions shall be granted." The commission exercised this power of determination when it conferred upon the White Star Bus Line exclusive authority to establish, maintain and operate a motor vehicle bus service for hire, for the transfer and transportation of passengers over the routes to be fixed by the commission. This was, we think, a "lawful determination" within the meaning of that term as used in section 67 of the Public Service Act. Nowhere in the record now before us is the order of the Public Service Commission as amended in 1935 set forth in its entirety. From the opinion in *White Star Bus Line, Inc.* v. *District Court,* 52 P.R.R. 809, it appears that the White Star Line was the complainant in the proceeding which gave rise to the order in its original form. The record which was

brought up by certiorari in that case, has been returned to the district court. It is a fair inference that a complete copy of the order, either in its original or in its amended form, will furnish more information than is contained in the dispositive portion thereof. In any event, we have no reason to believe that the commission did not follow the procedure indicated by section 67 of the Public Service Act. In a proceeding to obtain an order to obtain an amendment thereof, the commission cannot go far wrong if it takes for its guidance the standard set up by the Legislature in other portions of the act, as for instance, in subdivisions (a) and (1) of section 3, namely, ''such service including facilities, as shall in all respects be just, safe, reasonable, adequate, and practically sufficient for the accommodation and safety of its patrons, employees, and the public'' and a proper ''regard to the general convenience and safety of the public''. As we have shown, the Public Service Act makes it the duty of every public-service company to obey all lawful orders of the commission. Section 95 created and defined the offense and fixed the penalty to be imposed for a violation thereof when it ordained that—

''If any public-service person or company. . . shall fail, omit, neglect or refuse to obey, observe and comply with any final direction, requirement, determination or order made by the commission. . . such public-service company shall, upon conviction by a court of competent jurisdiction be fined not less than fifty (50) dollars nor more than one thousand (1,000) dollars for such violation, omission, failure, neglect or refusal.''

In case No. 7770, *In the matter of the White Star Bus Line, Inc., ante,* p. 370, this court said:

''Therefore, if the Public Service Act is to be taken at its par value, the Public Service Commission had a full right to regulate the traffic and forbid the owners of motor vehicles from hiring seats at five cents absolutely or without obtaining a certificate or authority from the Public Service Commission.

"We cannot agree with the appellants that the Public Service Commission is creating a crime. What it is doing *prima facie* is exercising an authority to regulate traffic by persons like the appellants and others engaged in the same business, in this case within the Municipalities of San Juan and Río Piedras and intermediate points. The cases are clear that the orders of Public Service Commissions and other administrative bodies can be given force by a general penal provision like that embraced in section 95, *supra.*"

The theory of the second assignment is that section 95 is void for uncertainty. The argument is: That the section does not say what orders are meant; from the Legislature's viewpoint the disobedience of an order, whether legal or illegal, whether wise or stupid, whether compliance therewith be possible or impossible, constitutes a crime; acts which are regarded as criminal must be minutely described if the citizen is to abstain from committing them. Here, appellant quotes from 16 C. J. 67 and 68, section 28, and from note 10 certain extracts which in turn cite *Czarra* v. *District of Columbia Medical Suprs.,* 25 App. (D.C.) 443; *U. S.* v. *Capital Trac. Co.,* 34 App. (D.C.) 592; *U. S.* v. *Washington R. etc. Co.,* 34 App. (D.C.) 599; *Stantenburgh* v. *Frazier,* 16 App. (D.C.) 229, 234; *State* v. *Gaster,* 45 La. Ann. 636, 638; *Augustine* v. *State,* 52 S. W. 77. He also refers us to 16 C. J. 62, in support of his contention that the power to determine what acts shall constitute a crime cannot be conferred upon any department of the executive branch of the Government, from which he concludes that a penal statute which does not describe the offense which it penalizes and which leaves to a commission the determination of what shall be considered a crime, is void, both as a violation of constitutional principles and because of uncertainty. Perhaps a sufficient answer to this argument may be found in 12 C. J. 846, 852, sections 329, 338, subdivisions "Defining Criminal Offenses" and "Power to Prescribe Penalty", where we read:

*"Defining criminal offenses.*—It has been held by some authorities that the legislative department may not delegate to an executive officer the power to determine what acts in relation to a certain subject matter shall constitute crime. The cases in the inferior federal courts to this effect, however, have been overruled by the United States Supreme Court, and the rule is now established that the legislature may authorize an officer to make rules and regulations for the purpose of carrying out the objects of the statute, and may make a violation of these rules a criminal offense, punishable in a manner prescribed by existing law.

*"Power to prescribe penalty.*—As a general rule, the legislature may not delegate to a commission the power to prescribe a penalty. It may, however, authorize a railroad commission to prescribe duties on which a statute imposing a penalty may operate; and it has been held that the legislature may even delegate the power to fix a penalty for violation of a regulation, where the fixing of a just penalty involves the consideration of so many facts that it cannot well be fixed by the legislature."

In any event, construing section 95 in the light of its context, we think the orders referred to are such reasonable and lawful orders as may be made by the commission in the exercise of the authority conferred upon it by the Public Service Act; and, in the absence of a stronger showing, we are not prepared to say that the section is void for uncertainty.

The judgment appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.